The United States Court of Appeals for the Federal Circuit is now open and in session. The United States and Honorable Court. Thank you. Be seated. Good morning, everyone. The first argued case this morning is number 147046, Fulmer v. McDonald. Mr. Stokes. Thank you, Your Honor. Good morning and may it please the Court. This case involves the proper interpretation of 38 CFR section 4.16. That regulation requires two key inquiries in adjudicating entitlement to TDIU. First, VA must look to whether a veteran is physically capable of working. And second, it must determine whether the veteran is vocationally able to secure and follow a substantially gainful occupation. The Veterans Court misinterpreted section 4.16 and excluded the second part of the legally required analysis. The Veterans Court's decision should be vacated and the appeal remanded with an instruction to ensure that VA properly interprets the regulation. Thank you. This case is not, as was framed in the Secretary's pleading, a case of prejudicial error. This is a case that involves the proper legal test. And the legal test is spelled out and indeed is not even disputed by my opposing counsel in section 4.16 and throughout the case law cited in the brief. There are no questions we urge. Can you point me where in the Veterans Court opinion that it recites an improper legal test? It recites the correct test. And I think that the relevant part of the Court's decision is the Joint Appendix 4 cited throughout the brief. And it cites the correct test. But then it does not follow it. Well, so even if we take that statement as it were, isn't the misapplication of the test an application of law of the fact that's not within our jurisdiction? It is not. It is not because the regulation's plain language demands it. And, in fact, the Secretary even says that words must and shall permeate throughout the case law, throughout the pleadings, and throughout the regulation. It's not a matter of an application of the test. They didn't even run it. They didn't do anything with it. And an application of legal test, this Court has found in the CUE context. It's found in the Martin case that the proper application of a test is a legal question for the Court. Let me just get to it. I think I understand what your argument is and where it's coming from. But I think I don't have the appendix. I just have the Board's opinion in front of me right now in your brief. But you're talking about the last paragraph of Section A of the Veterans Court opinion, aren't you? Yes. So the first sentence, you agree that properly cites the test. It does. And then the second sentence, the Court notes that the Board failed to do its full job and then says that it's harmless. That's correct. And then your argument, I suspect, is with the third sentence where you think that the way they wrote that sentence suggests that they're not applying the proper test. They're not because they only look at the medical evidence. They didn't. Okay. I just want to make sure that that's where you are. That seems to be, you know, arguable for the first part of that sentence. But then the second part of that sentence that suggests that there's nothing else in the record that would contradict the finding that he's not capable of sentence error. So I understand your point. I mean, if the Board and the Veterans Court refute to look at vocational stuff, that would probably be the wrong test. But are we talking about essentially equivalent with how this opinion was written? Because it seems to me that it's plausible of reading this opinion to say there's just nothing in the record to suggest that he has vocational problems that would prevent him from getting sedentary work. It's not equivalent with how it's written, Your Honor. What does that second phrase mean, that you haven't offered any evidence to contradict the finding that he's capable of sedentary work? My response to that would be that, first of all, the court is getting into a fact-finding situation there, which is improper. And the second part is that is not an entirely correct statement. Well, can you tell me? Because I looked at the record, and it seems to me that there's not a whole lot in the record about the veteran's capacity to do sedentary work. The only things I saw that were relevant at all was that he used to work at Wal-Mart as a personal shopper and a greeter, and he hasn't been able to do that. But it doesn't say anything about his past work history for the 50 years or so before. I mean, the cases where we found this really relevant is where somebody has been a farmer their whole life and haven't been trained to do any kind of office work, which I know very well. My father was a farmer his whole life, and if you tried to make him go work at a computer, he couldn't do it. But that's not in this record, is it? Throughout the record, something that specific, Your Honor, is not in the record. There are two problems, though. First, it's the VA's responsibility to develop this case. It is in the regulation, and it is in the case law. The board did not do it. There's just nothing that even addresses it in the board's decision. That's not a question. But, again, I mean, you have to prove evidence. You have to provide evidence to make your own case, too, and that's not legal error here. But I, just as a matter of curiosity, want to know, is there anything in this record that suggests what this veteran did before he started working at Wal-Mart? There's nothing in the record to suggest what he did before working at Wal-Mart. But it is important to keep in mind, Your Honor, I believe, that he did substantiate his claim. Otherwise, we wouldn't be here. The board started running the 4.16 analysis in this case, and he submitted, and throughout the record— They say he didn't substantiate the claim. They say that he didn't come forward with evidence that there is no sedentary position or the arguments that are now being raised. Are you telling us that it was the board's obligation to determine the substantiation? It is. Even without knowing that this was an issue that he was pursuing? It is an issue he is certainly pursuing. That's why the board started an analysis that it didn't really finish, and the court did the same thing. But under VA, under the regulation, it says the rating board shall discuss this information, shall provide this information. That is in 4.16. Even if they don't know that it's an issue? It says I can't get a job because I have physical disabilities. Well, he did say, I believe at joint appendix 187, he did, through his national service officer representative, they did make an allegation, and it's not as specific as Judge Hughes was pointing to, but it is an allegation that he cannot maintain gainful employment. He did say that. That did come in. He did say throughout the record at 54 and 55, he did say he can no longer do the job that he was doing. It is not specific. He did not provide an educational and vocational assessment. He did not do that. But again, it's VA's responsibility. Once they start running this analysis, and once 4.16 is in play, it's VA's responsibility to discuss this and to take it into consideration. Even if it hasn't been placed at issue? But it has been placed at issue. How far would you take that? Because, I mean, this is a case where he doesn't meet the 4.16A standards for TDIU, right? We have lots of these cases where people don't meet the A standards. Is your view that every time the A standards aren't met, that somebody has suggested unemployability, that the RO or the board or somebody has to do this full-blown look at the vocational? Yes, that is my position. And it's not only my position. It's VA's position. It's in their M21. It's in the regulation. It's throughout the case law. The M21 provision is cited in the pleading. Have it spelled out what the VA regional offices are supposed to do in these cases. VA simply did not do it here. They did a rote analysis, said basically they thought he could work, went out, got physical. They did. They answered some of the physical questions at play here, got medical evidence, but then did not delve the extra step that is required by the regulation and end their own interpretations of the regulations and get into the educational and work history form. So how much of a burden on your approach is there on the veteran to place this aspect as some kind of issue? When he said he can no longer work and the regional office took that to mean that he was claiming total disability based on individual unemployability, then VA's analysis has to start. Your position here is that he couldn't work at a desk job because his disabilities would not permit him to do anything other than a desk job. That you haven't, it would be perhaps factual and therefore beyond our jurisdiction, but said I can't do a desk job because I never learned how to operate a computer or whatever else, which I think would have very little to do with the disability. But you say we take the veteran as he comes to us. I appreciate that. We're trying to understand where the line is that the veteran adequately met on your position and that placed the burden on the government to bring out more elaboration, which is what I think you're asking for. When he said, your honor, when he said I can't work due to my service-connected conditions, that's when VA had to start running the correct analysis. But suppose, and I recognize there's no question that the board didn't fully discuss it, but suppose here we have the same record. The veteran didn't come forward with anything beyond that bare statement and the board looked at it and said he doesn't meet the threshold requirements under A. We're not going to refer under B because his medical condition would allow him to do sedentary work and there's nothing in the record that would suggest that he has a vocational or background difficulty that would prevent him from sedentary work. Is that sufficient? If the board had said there's nothing in the record and they had given him a full opportunity to supply those and ensure that he said I have nothing more to submit. This is where I'm trying to get at. You're suggesting now, I think going down a line of duty to assist in things, that there's a particular duty to assist in how to prove your claim. We've rejected those arguments. Absolutely. For me, this is what this case seems to be. The problem here is that you're requiring the board to say something that the record didn't even address. And the veterans court found the board should have probably said one more sentence but that it was harmless because the record didn't reflect that anyway. But we don't know if it's, we don't really know that it is harmless error because we still don't know what the board was doing, frankly, because the board just gave this paragraph answer citing the medical evidence and moving on. If they had followed the correct legal test, they may very well have remanded this to the regional office to go out and get some more information. We don't know. That is a factual finding that requires vacator of the veterans court's decision. But that's not what we're reviewing. We're reviewing the veterans court's decision that that failure was harmless. But the veterans, but I disagree again slightly, Your Honor, with the characterization of this as a harmless error analysis. It can't get to harmless error. Well, I understand. Because if we see it as harmless error, you agree we don't have jurisdiction to review it. Yes. If it's harmless error, that's true. But it's not a harmless error analysis because the board didn't do the right test. Had the board run the correct legally required analysis, it may have gotten in there and said, oh, we don't have enough information about this. The veterans court agrees with you that the board didn't fully explain its legal analysis. I'm not sure that they said they misapplied it. But they recited the right standard, and then it comes down to our interpretation of that sentence. Whether that's correctly stating the legal, applying the legal standard or not. And that's why I feel so strongly about this case. They didn't comply with the law. There is just no question that VA did not comply with the law here. What this court should do for Mr. Fulmer is send it back. All we are asking is for it to be sent back to the veterans court with an instruction that they apply the right test. It seems to me like you had a very good case at the veterans court. And you had very good reasons and basis arguments that the veterans court should have accepted. But I don't understand how we can do anything beyond that because we certainly can't review a failure of the veterans court to remand for reasons and basis. And once it made a harmless error finding, it seems to me that that's beyond our jurisdiction. It's not reasons or basis. And I appreciate your Honor's point about that. But that was your point below. It was our point below. But it was a very good argument. Thank you. And we honed it in when we went for reconsideration because it was a surprising decision. Because there is no question VA didn't comply with the law. And then turning to the plain language of 4.16b, it does say that the rating board shall. And under 7104a, VA has to consider all of the relevant evidence. 4.160 is relevant. It didn't properly apply the test articulated in there. And that's why you can't get the prejudicial error yet. You can get the prejudicial error if they had run through all of the right things here, if the board had done its job. Then perhaps the veterans court would have a point in characterizing this as a prejudicial error analysis. But it doesn't. Because the legal test is, at best, incomplete here. But 4.16 says the rating board will include a full statement as to the veteran's service-connected disability, employment history, educational and vocational attainment, and other factors bearing on the issue. But we've sort of round about, and I think that you answered Judge Hughes' question, that there doesn't exist particularized duties to assist. Meaning there isn't failure here if the board didn't, say, answer this educational and vocational questionnaire. The board doesn't have, the VA doesn't have an obligation to probe onto specific and discrete issues, do they? Are you now suggesting that the board failed in a duty to assist by virtue of not investigating precise issues about employment history beyond what the veteran put into evidence, namely his Walmart prior history? What I'm saying, Your Honor, is that it should go back to the board. No, no. I don't want to hear what you're saying. I want you to answer my question. Did the VA have an obligation as part of its duty to assist to probe specifically into employment history beyond what the veteran offered in terms of his Walmart history? It does, Your Honor. Not necessarily under the duty to assist, but it does have an obligation to analyze those questions under the plain language of 4.16b. It does. It has an obligation to include a full statement with regard to any evidence that is presented on those questions. But what I'm failing to see is where the VA had an obligation to seek and obtain additional evidence beyond what was already in the record, which was his most recent history. Again, I think that the M21 is illustrative there. The M21 has a specific layout, and it's cited in our pleadings, has a specific layout for what VA is supposed to do when these claims arise. This is just in the TDIU context, and I don't believe it falls necessarily under the duty to assist, although VA certainly does have duties to help veterans. And under the VA's own regulations to answer these questions, all they've answered is maybe. All they've answered is he can physically sit. He can sit for prolonged periods. We know that. Now what? Does that mean that he can do substantially gainful occupation in his community? And that analysis is required under VA's own interpretation of its regulation. So I do believe that the Board had an obligation. I think that that can be done on remand. Again, the Board will have to analyze what facts it still needs to properly comply with the law. But you're now suggesting that not only do we remand to, say, explain on this record whether or not he can do sedentary work, but you're effectively asking us to remand and cause the Board to reopen the record and do additional investigation and acquire additional information. That's what you really want, because on this record you can't prevail. On this record, his employment is the Walmart employment, and there is no evidence he can't do sedentary work, which led to the harmless error decision. I don't know that on this record we can't prevail. What evidence in this record would suggest he's incapable of sedentary work? He can sit for prolonged periods. We know that. So if that means sedentary, but we don't know what sedentary means, if it's substantially gainful, if his training and expertise has him able to do a substantially gainful job. All we know is he can sit. And maybe on this record it would go back and the Board would take another look at this. I'm not suggesting that the Court do that today, nor did we suggest that the Veterans Court should. Maybe the Board would take a look at it and say, look, he worked at Walmart. He says he cannot work. They found that lay testimony to be confident, by the way. Maybe you're giving him the benefit of the doubt. The Veterans Court can't make fact findings except in one tiny circumstance, prejudicial or harmless error, and they made it here. So the fact finding you're saying I have to send it back for the Board to do, that's the precise fact finding the Veterans Court made, and that's the only fact finding they're ever allowed to make. And it's expressed in their statute. They're allowed to make fact findings incident to a harmless error determination. They made it. So what is the point of sending it back to the Board now? The point of sending it back is nobody's run the correct analysis yet. No, the Veterans Court did. They made the fact finding. You're saying on this record perhaps the Board would have concluded to the contrary. But the Veterans Court just did that analysis, and that's the only fact finding they're allowed to make. Well, I think, first, Your Honor, I think one of the things is, yes, I think on this record they could have made a favorable finding. I think it is possible. But on remand, as a practical matter when it goes back to the Board, if the Board does determine that to comply with the correct legal test they need to go out and get more information, they are free to do that. It does not need to be included in this court's order. But the reason that it's not to the second part of your question, the reason the prejudicial error analysis is improper at this point is you can't get there because the test has not been properly run and has not been properly handled. And see, this I don't understand at all. You're suggesting, I think, now that if the Board makes an error, the Veterans Court can't make a harmless error determination because the proper test has never been run. That's not what you're saying, is it? No, it's not what I'm saying. In this case, I don't see how we could even send it back to remand it all the way to the Board. At most we could say you applied the improper legal standard and send it back to the Veterans Court. But if we send it back to the Veterans Court, aren't they just going to say here's the proper legal standard? Under that standard, the Board may have erred, but it's nevertheless harmless because the record doesn't support a finding of inability to do sedentary work. And if they did that explicitly, we couldn't touch it, right? The court could do that. The court could do that. But the court could also say, yes, this is the proper test. We have an order from our superior court that says that we did not do the proper test. As a practical matter, when running the proper test, this should go back to the Board of Veterans Appeals so they can do it. I guess to answer your question. You're asking us to say essentially that in these circumstances, it's impossible for the Veterans Court to find harmless error. I think without proper factual development, I think it's improper for the court to find that there's no prejudicial error. I think that Your Honor is absolutely right. There's no question Your Honor is right. Which then flips to the other problem that you're suggesting that the board failed somehow to properly assist the veteran or develop the record. That's going to be a factual finding on remand. This court just needs to send it back to the Veterans Court, letting them know, telling them, not letting them know. This court needs to send it back to the Veterans Court with an instruction to properly interpret and comply with the law. At that point, if the Veterans Court gets into it, still finds harmless error, that is what it is. But there's a chance that they do not do that, which is what makes remedy here so very important. Okay. Let's hear from the Governor. Thank you, Your Honor. Mr. Hafford. May it please the Court. We see this as a prejudicial error case involving a reasonable basis error. What does, I mean, an extremely aged veteran who can't work anymore have to do to get the board or the RO to look at his occupational requirements? I mean, he clearly told them, I have these problems. These were what I was doing because of my back injuries. I can't do standing work anymore. Doesn't the board have something beyond just a cursory requirement to say, well, you could do sitting work when they don't even know what the background of this veteran is? Actually, let's talk about 4.16b and what it actually does. I think Judge Moore started to read a paragraph, the last sentence of 4.16b. It applies at the regional office level. It's the instruction that the regional office must follow when it has determined that an individual case should be referred to the Director of Compensation Programs for determination about whether TDIU should be awarded in a situation where they don't meet the percentage factors. That requirement to include that statement is a requirement to include the statement when the decision is made by the regional office to forward it to the Director. No, no, I understand that. But in deciding whether to refer or not in a veteran's situation like this, don't they have to at least think about whether his, even if they conclude that medically he's capable of doing sedentary work, don't they at least have to think about whether he is vocationally qualified to do sedentary work? I think it's a two-step process. I think if you're medically able to work, like this veteran was determined by the medical evidence that he was able to work, and I'm drawing a little bit from some Veterans Court case law that kind of explains this a little bit and how we got to this point we're in today with respect to the duty, if you will, on the part of the board in part of its analysis to even touch on this. It arises when there is evidence of the record suggesting that perhaps he can't perform work despite the fact that the medical doctors have cleared him to perform work, like was the case here. But isn't that really the problem here? The entire record is this back-and-forth is exposed, is whether in fact the veteran had provided enough information to support his position. Isn't that where the duty to assist comes in? Ultimately, we begin with who has the ultimate burden to carry their case. 5107 places that with us. Finally, whether the assistance induces enough evidence in order to support the veteran's claim is where the burden of proof comes in. There's no burden of proof is there at the threshold of the duty to assist. If in fact there isn't enough evidence in the record to support the claim and nevertheless it becomes apparent, as from everything we've heard it might be, that we need more information. Isn't that where the duty to assist comes in? If I understand the court's question correctly, there are, if you will, burdens or steps that the evidence must take, a form of the evidence must take, must be some reasonable evidence suggesting this or leads to the truth. These kinds of things which are lower than the ultimate burden. I think the court, if the court didn't say that, that's true. In other words, these hurdles are easier to meet by the veteran in the evidence that would necessitate certain kinds of development that's spelled out in the regulations and the statute. Are you saying that there's no duty to assist unless the veteran's already presented some sort of crime-of-patient case? No, that's the old well-grounded claim standard. But when that was replaced by what types of development would be performed by the VA, they retained some element of reasonableness as to how they would approach their development requirements. I don't see anything on the record saying that this veteran's position was unreasonable. Was it established as a back injury? Established he can't do stand-up work or physically demanding work. So when the regional office first denied the claim, they told him, the reason we're denying your claim is because you can perform sedentary work. Then at that point, incumbent upon the veteran to say, that doesn't matter, I still can't work. That's what he said? No, he didn't provide any evidence to show or even point the VA to go, where would they go get evidence to show why that would be the case? The duty to assist, perhaps all they have to do is tell the veteran, you have to provide evidence. Well, that's incumbent in the decision, which when he told them you can't perform sedentary work, he was invited at that point to submit a notice of disagreement explaining why the VA was wrong. And this court has held numerous times, you just can't come back and say... Why the VA was wrong about what? They never said that he couldn't do physical, that he couldn't do sedentary work. Right, they said he could do sedentary work. The question is whether he presented enough evidence, enough information to support his unchallenged statement that he could only do sedentary work. Yes, but he could do sedentary work. So, basically, he is not unemployable. And so, if there's some reason, despite the fact that he can't... That's the question, whether he's unemployable. Right. There's no sedentary work I can do with my educational background. Now, if I was asked, if I was told, you don't qualify for TDIU because you can perform sedentary work, and I knew there was a reason why I couldn't do sedentary work, it's incumbent upon me to tell the agency why. No, I can't do sedentary work because... This is the only of all the kinds of cases we see where there's an obligation placed on the government as a party to help the other side present his case. Yes, and this court in numerous cases has explained at what stations and stages of the development of the case the duty to assist works. So, 5103, which describes the duty to assist, occurs at the outset of the case when the VA needs to tell the veteran what he needs to do to fulfill his claim requirements or whatever. And at this time, as the court alluded to earlier, there's no suggestion at the time he submits his first claim for increase that there's any question about what his employment or occupational background is. The government position is we're not going to help you unless you present enough information to show that it would be fruitful. What I'm suggesting, no, I'm not suggesting that, but what I'm suggesting is when you're told in your 5104 notice of decision by the rating office the reason why you're not going to get a TDIU award, and there's no question that he was told that, and it was because he could perform sedentary work, then I would say it's incumbent on the veteran at that point in responding to that decision in his notice of disagreement to say, you were wrong, I can't because, and it would give the VA some notice about what they could develop so that if he came back and said, I don't have a proper educational background, VA would be on notice and say, oh, we should look into that, and they could go develop that, but that's not what happened in this case. So, that's what I'm suggesting, and that's why I'm suggesting a remand. When was the first time the veteran suggested that he could perform sedentary work? The very first time he could. I think it was after the notice of disagreement. I think the notice of disagreement just said, let me see what the notice of disagreement says. Oh, well, his service department person just took issue with, and they just stated, we disagree with the denial of entitlement to individual employment. I'm looking at page 128 of the Joint Appendix. But back to what this court can do. I'm sorry, did you answer Sushil's question, which is, when is the first time that he alleged that he could perform sedentary work? I can't answer that. I can tell you apparently it was not the notice of disagreement, because it's not in there. So, let's see. The next document would have been 171, it looks like. Has he ever alleged he can't do sedentary work? Yes, I do recall somewhere in the record, Your Honor, he has a handwritten statement saying, well, I don't know if he says that I can't do sedentary work. He just says that I'm not employable, or I can't get a job. I'm not sure he says something about I can't perform sedentary work. Well, we have, this is of your friends who presumably knows, but it seems to me that there was not a very clear statement that he was incapable of doing sedentary work until fairly late in the game. Possibly. But I want to go back to what this case is. I think this case is a rule of prejudicial error case. And as was learned earlier this morning and through the briefs, the burden to establish the prejudice of an error is on the claimant, as the Supreme Court said in Sanders. And nowhere in this record has the evidence been identified that there was an error. So when you answered the question about the notice of disagreement, what you would have done, what you would have expected the veteran to do, is say, no, I can't do sedentary work because I don't have that skill set or whatever. Then do you agree that it would have been incumbent upon the VA to further develop a record with regard to his skill set, his employment history or something? I think that would open up the possibility. No, that's not what I said. It wouldn't open up a possibility. Would it be incumbent on the VA at that point to develop a record, or could they simply say this record doesn't contain any evidence in particular about what you're capable of, your bare allegation that you're not capable of sedentary work isn't enough to convince us otherwise? And would the VA have been entitled at that point to rely solely on what has been presented in the record and say the record failed to establish that you're unable to do sedentary work? I don't know at what level of legal error this could fall, but I do think that the Veterans Court would be within its province to say that there's a reason for Basie's error. Well, of course they would be within their province. They were within their province in this case and damn well should have done it, but they didn't. And that's not the issue in front of me. I'm asking you at what point is there an onus on the VA to develop those additional facts? And you had suggested a minute ago, which you're now backing away from, that well, if he had in the Notice of Disagreement put the VA on notice, but now you're not seeming to be wanting to erase that idea. I think that in the past where courts have found an error in the duty to develop is when there has been a reasonable presentation made that should have put the VA on notice to go do something. And this court and the Veterans Court have held in those cases that the VA should have done it. So in your hypothetical, there's a question of sufficiency obviously, but certainly that would be a basis for the court to say you didn't do what you're supposed to do. Well, are they on notice when in this case all we've talked about are his back-related issues? But there's an additional factual finding by the VA that he has hearing loss and as such is incapable of using a regular telephone. Wouldn't that affect a large number of what would otherwise be sedentary job possibilities? So I guess what I'm suggesting to you is, and I don't have the right to review the facts, and I'm well, well aware of that, but I guess what I'm suggesting to you is you're saying maybe there was a failure of a duty to assist once the VA has put on notice that there may in fact be problems with him performing sedentary. Does this record possibly provide such an opportunity given the additional disability related to his hearing, which he's not going to be a telephone answerer or some sort of receptionist who needs to work a phone. He's got hearing problems, so any sort of interactive position that's a sedentary nature that uses a phone is not necessarily fair game for him. I'm just saying, what's necessary? Well, I mean, I think as I started to say earlier, that the way this TDIU thing works is sort of a two-step thing. And notwithstanding the fact that there's evidence that he has hearing problems, I'm not quite... There's actually a fact finding he required use of a specially equipped phone due to his hearing problems. Right, but he was complaining of tinnitus as related to service connection. He also has several non-service-connected disabilities, and I thought that some of the hearing loss was not necessarily attributed to his service-connected disabilities. Yes, but even if hearing loss isn't service-connected, if that's the state of the veteran, much like the former in Judge Hughes' prior case that he pointed to, isn't that we have to take the veteran as we find him? If he is blind and deaf and mute and you're telling me he can work as a receptionist, isn't that problematic? For purposes of TDIU, you cannot take into account non-service-connected disabilities. No, but for purposes of TDIU, you have to assess what he is capable of. That's what the veteran's manual says. It actually uses the word capable. And so if his personal disabilities are such that he's not capable of sedentary work, then how can you find he necessarily is, right? Don't you have to take into account those other factors? Well, the regulation says that you need to include a statement demonstrating you have considered that when you forward the request for TDIU to the compensation director. Now, VA has interpreted that, although not universally, I might add, because there's some inconsistency with the VA law. Isn't the VA manual, quote, the veteran's success in obtaining work of the type the veteran is capable of performing and is available in his or her community? That's what the VA's manual's interpretation says. Whether or not that's binding and a basis, this court has said in numerous decisions that we're not going to look at the manual to impose duties on the VA. In this case, the regulation, 4.16b, doesn't even impose that duty. But the veteran's court law does. So working from there, although, like I said, it's inconsistent because the veteran's court recognizes that what the veteran's court has done essentially is impose a burden on the board in some cases, but not all cases, in which there has been a finding of where he could work some, medically he could work some, but not all, and where there's evidence in the record that suggests that perhaps he, for other reasons, occupational or educational, cannot be fully employable. Then it's incumbent, according to the veteran's court, on the board in addressing a challenge to a denial of a TDI award to address that. That's the error that the veteran's court found here, which is a reasons and basis error. And when you go back through the case law on this issue, although it probably has its genesis in 4.16b, the actual error cited by the veteran's court in this case was really an error of reasons and basis. The board didn't explain why, in this case. Are you sure? Because I thought what they said is the record didn't contain evidence that would have led to another conclusion. Now that's what led to their harmless error finding. Because it is true, the veteran's court, when they have imposed this requirement, has said in the past, but we won't find error where there is no evidence in the record that demonstrates that, or any argument made to the veteran's court by the claimant, like there wasn't in this case, that the error in not talking about it was prejudicial. So I see my time is up, but I want to just reinforce the fact that I think not only do you have a prejudicial error obstacle here, but this is really a reasons and basis test that the veteran's court found the board failed under its own case law. And under Cook 363, that's also something that this court can't disturb. Thank you. Thank you. Mr. Stokes, we've exhausted your time. Is there anything new that you need to tell us in the next minute or so? There is not, Your Honor. We do urge that the court remand us for compliance with the proper legal test. Okay. Thank you. Thank you. The case is taken at resolution.